223 N.J. Super. 377 (1988)
538 A.2d 1261
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL GONZALEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1988.
Decided March 2, 1988.
*379 Before Judges DEIGHAN and LANDAU.
Peter M. Jacques, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Peter M. Jacques, of counsel and on the brief).
Gary H. Schlyen, Special Deputy Attorney General, Acting Senior Assistant Prosecutor, argued the cause for respondent (John P. Goceljak, Special Deputy Attorney General-in-charge, Acting Passaic County Prosecutor, attorney; Gary H. Schylyen, of counsel and on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
*380 Michael Gonzalez appeals following his conviction on a charge of first degree robbery in violation of N.J.S.A. 2C:15-1 following a jury trial.
Gonzalez, then aged 19, was sentenced under the Graves Act inasmuch as a sawed-off shotgun was employed in the robbery. He received a State Prison sentence of 15 years with a mandatory five year parole ineligibility.
On appeal he urges:
I. THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY DENYING THE DEFENDANT HIS CONSTITUTIONAL RIGHT TO TESTIFY.
II. THE TRIAL JUDGE FAILED TO APPLY A BALANCING TEST BEFORE PRECLUDING THE DEFENDANTS ALIBI TESTIMONY FOR NONCOMPLIANCE WITH THE ALIBI-NOTICE RULE THEREBY REQUIRING REVERSAL AND REMAND FOR A NEW TRIAL.
III. DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO A FAIR TRIAL.
IV. DEFENDANT'S SENTENCE VIOLATED THE CRIMINAL CODE'S POLICY OF SENTENCING PARITY AND MUST BE REDUCED.
The State's witnesses presented varying versions of the robbery. The victim testified that at about 5:00 a.m. on August 25, 1984, a car pulled up beside his at a Paterson intersection and a female asked him for directions. He pulled over to the side and as he spoke to the woman, a man in the rear seat of the other car pointed a shotgun at him and demanded his money. Another man was seen in the driver's seat. He was unable to identify any of those persons. The victim testified that he "eased out" and ran from his car leaving the motor on, keys in the ignition. Upon reaching a nearby taxi stand, he arranged for the police to be summoned. When the victim returned to the robbery scene with the police, he found that his car was missing.
Codefendant Santiago, who entered into a plea bargain on the same indictment, testified for the State that he was in Paterson with Gonzalez and codefendant Anna Rodriguez during the early morning hours of August 25 when Rodriguez, who had a sawed-off shotgun with her, suggested that they rob someone. *381 Santiago was to handle the gun, Gonzalez was to be the lookout and Rodriguez would pose as a prostitute in order to pick up a likely victim so that they could steal his car. According to Santiago, Rodriguez left and returned after a while riding in the passenger seat of the victim's car. As it pulled into a parking lot, Santiago pointed the shotgun at the driver through the passenger side and told him to get out and leave the car keys. The victim ran from the car. Santiago denied that he demanded money. Gonzalez then joined the two from his post as lookout and the three went back to New York City where they slept. On the following day, August 26, New York police arrested Gonzalez and Santiago, who were found sleeping in a car.
Rodriguez' version of the incident was that Gonzalez picked her up at her house in New York on August 24, and together the two travelled by bus to Paterson to visit Gonzalez' brother. Not finding him at home, the two went to a nearby school yard where they met Santiago and others. According to Rodriguez, Gonzalez and she went back to the brother's house where Gonzalez showed her a shotgun. Thereafter, Santiago arrived at the house and the three returned to the school yard, Gonzalez carrying the shotgun inside his belt, covered by his jacket.
Rodriguez testified that it was Gonzalez' idea that she serve as a decoy. She stated that she refused and that Santiago then took the gun from Gonzalez. She stated that she was later asked to assist so that they could stick up somebody but she again refused. She testified that she left the pair at about 1:00 a.m. on August 25, and that as she was walking in Paterson while crying and drinking a hot chocolate, the victim drove up and asked if she needed help. When she entered the car, he offered her money in return for oral sex. Ultimately, she responded that it would cost him more than the amount proffered. The victim pulled into an alley, whereupon Santiago pointed a shotgun through the window from the passenger side towards the victim, who fled. Gonzalez then appeared, and the three drove in the victim's car to Rodriguez' house in New *382 York. Santiago and Rodriguez went in. Later in the day, she said they were observed by New York Police while she was at the wheel of the victim's car. Gonzalez and Santiago were pushing it as it was out of gas. However, they ran away and left her there. When the police learned the car was stolen Rodriguez was arrested.
Gonzalez took the stand and testified that he was not in Paterson at the time of the offense, and indeed had not been in Paterson since June or July because of an incident on a New York bound bus when he was arrested on what he said were false charges. He denied ever having seen Anna Rodriguez until the trial, and also denied ever having met Santiago until the morning of August 26 when he took a ride in a car driven by someone named Hector Sanchez. According to Gonzalez, he noticed a shotgun shell while he was in the back seat and was told that he could keep it, so he put the shell in his pocket as a souvenir. He testified that he inquired several times to learn what the item was, but inconsistently stated later that he was familiar with shotguns and shotgun shells because of a relative who hunted.
At one point on direct examination, defendant testified that he was not in Paterson when the crime occurred adding in response to his attorney's question that he "was home in New York" at the time. The prosecutor's R. 3-11 motion (absence of prior notice of alibi) was partially sustained. The trial judge instructed the jury to disregard defendant's statement that he was in New York but did not disturb his testimony that he was not then in Paterson and had not then known the codefendants.
Immediately prior to the trial, in response to standard inquiry by the trial judge, Gonzalez' attorney had specifically represented that there would be no alibi defense. Thus, the Gonzalez "home in New York" statement came without notice and after the State's case was completed.
During the State's case, New York City police officers testified that they came upon Rodriguez at the wheel of an automobile *383 being pushed by three or four youths in the Bronx about 9:30 p.m. on August 25, 1984. As police approached, the young men disappeared into a crowd. Rodriguez was questioned and when she was unable to produce ownership papers or to indicate the name of the owner, a computer search revealed that the car was stolen. It belonged to the Paterson victim. Rodriguez told the New York City police that Santiago instigated the pickup strategy and carried the shotgun. On the following day other New York City police found Gonzalez and Santiago asleep in another car, live shotgun rounds in the pockets of each man.

THE ALIBI
Gonzalez contends that the trial judge's instruction to disregard the "home in New York" alibi was an unconstitutional deprivation of his right to testify and an improper exercise of discretion. Our conclusion, limited to the facts of this case, is that the limited preclusionary ruling was both constitutional and well within appropriate discretionary limits.
R. 3:11-1[1] continues in effect a policy first adopted by statute in 1934 as R.S. 2:190-7, the purpose of which was "to do *384 away with the existing unfairness in criminal trials of a surprise alibi ..." See Pressler, Current N.J. Court Rules, Comment R. 3:11-1. As observed in State v. Baldwin, 47 N.J. 379, 388 (1966), cert. den. 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966) the rule does not compel a disclosure by the defendant, but merely advances the time of making a disclosure he will rely on at trial, thus "avoiding surprise at trial by sudden introduction of a factual claim which cannot be investigated unless the trial is recessed to that end."
Here, we have considered Gonzalez' argument that his alibi was of particular importance to him because of the inability of the victim to identify any of his assailants and the differences in the factual version of the crime evident in the testimony of the State's witnesses.
We have also considered however, the fact that Gonzelez' attorney, in his presence, represented that there would be no alibi testimony immediately prior to trial, during a pretrial inquiry routinely conducted precisely to anticipate and avoid what has been referred to as "trial by ambush."[2] The pretrial run-through is a last ditch effort, as it were, to carry out the purposes of R. 3:11-1 and 2 in a reasonable way, before jeopardy may attach.
Gonzalez testified without objection that he was not in Paterson at the time of the offense, and indeed had not been in Paterson where his brother lives, since a June or July arrest incident on a bus. He also testified that he did not know either codefendant until well after the crime. Only his then unsubstantiated[3] *385 alibi of being at home was precluded, and that only after the jury heard the words. On the record before us, it is apparent that the jury was confronted with the same credibility choices they would have had to make if the trial judge had not instructed them to disregard the "at home" portion of Gonzalez' testimony. There was more than ample basis for those choices, including the considerable testimony of the defendant. Thus, even were the ruling deemed by us to be erroneous, it was harmless beyond a reasonable doubt in these circumstances. See State v. Macon, 57 N.J. 325, 336 (1971); State v. Winter, 96 N.J. 640 (1984); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The above factors, i.e., defendant's apparently deliberate withholding of his alleged location at the time of the offense, and the harmless effect of the preclusion on this record, are among the appropriate considerations which we set forth in State v. Francis, 128 N.J. Super. 346 (App.Div. 1974). There Judge (now Justice) Handler recommended a "balancing test" for preclusion. Factors to be considered were (1) extent of prejudice to the State; (2) the extent to which the alibi defense was crucial to defendant's case; (3) whether a less severe sanction would preserve the policy of R. 3:11, and (4) the feasibility of a trial continuance to permit investigation of the alibi.
Each case presents widely varying circumstances. Here defendant was already testifying. The State's case was concluded. Any investigation, if it was still possible after eight months would had to have involved the cooperation of New York law enforcement authorities, and an indeterminate amount of time for continuance. The negative effect upon the efficient operation of the criminal justice system is obvious. Less measurable but no less obvious, is the extent to which the fresh testimony *386 in the State's concluded case would diminish in juror recollection and impact, replaced by an enhanced and disproportionate focus upon the very subject of the rule violation. Here, there would be no effective lesser sanction against defendant or his attorney. Rule 3:11 and its predecessor were promulgated to avoid this precise situation. Its policy would have been trodden into the dust by either overruling the State's objection or by granting a continuance on these facts. In either case a flagrant violation of R. 3:11 would have been rewarded by delaying and confounding the prosecution in the midst of trial.
Gonzalez was obviously always aware of his own location, yet curiously he did not tell anyone in law enforcement (although its early verification would have exonerated him) or apparently his own attorney of the alibi until he testified. Thus, the likelihood of either a deliberate withholding or fabrication was substantial.
We hold that the trial judge's ruling passes the Francis "balancing test." It was consistent with New Jersey cases such as State v. Baldwin, 47 N.J. 379 (1966), cert. den. 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966); State v. Woodard, 102 N.J. Super. 419 (App.Div. 1968), certif. den. 53 N.J. 64 (1968), cert. den. 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969); State v. Nunn, 113 N.J. Super. 161 (App.Div. 1971), and State v. Francis, 128 N.J. Super. 346 (App.Div. 1974). Cases such as State v. Harris, 117 N.J. Super. 83 (App.Div. 1971); State v. Mitchell, 149 N.J. Super. 259 (App.Div. 1977) and State v. Volpone, 150 N.J. Super. 524 (App.Div. 1977), are not to the contrary. They merely illustrate that the preclusion sanction is not lightly to be exercised, particularly if the State has been given reasonable advance notice and the excluded testimony is apt to be of material consequence.
The "balancing test" or weighing process has recently been given a constitutional dimension by the United States Supreme Court in a case decided after briefs were filed in this case. In Taylor v. Illinois, ___ U.S. ___, 108 S.Ct. 646, 98 L.Ed.2d 798 *387 (1988), the Court considered an analogous contention that the Sixth Amendment bars a court from ever ordering preclusion of defense evidence as a sanction for violation of a discovery rule. It stated:
The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.... The `State's interest in protecting itself against an 11th hour defense' is merely one component of the broader public interest in a full and truthful disclosure of critical facts. [Id. at ___, 108 S.Ct. at 653]
As we did in Francis, the Taylor Court relied heavily upon Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). In Williams, the Supreme Court said,
In the case before us the notice of alibi rule by itself in no way affected petitioner's crucial decision to call alibi witnesses or added to the legitimate pressures leading to that course of action. At most the rule only compelled petitioner to accelerate the timing of his disclosure, ... nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State's case before announcing the nature of his defense ...
[Williams v. Florida, 399 U.S. at 85, 90 S.Ct. at 1893, cited in Taylor v. Illinois, supra, ___ U.S. at ___ n. 21, 108 S.Ct. at 656 n. 21.]
Thus, the U.S. Supreme Court has rejected petitioner's argument that a preclusion sanction is never appropriate no matter how serious a defendant's discovery violation. Here, the preclusion did not occur until the prosecutor objected to Defendant's alibi, heard for the first time as he testified. Even the dissent in Taylor recognized that such sanction might be warranted when, as here, the criminal defendant himself appears to be personally responsible for the discovery violation. See, Taylor v. Illinois, supra, ___ U.S. at ___, 108 S.Ct. at 658.
In Francis the defense counsel had indicated that the defendant might testify to being in another place at the time of the crime. He did so prior to the presentation of the defense case, but after the State's case had been submitted. The alibi was barred. We observed that there was substantial support for *388 the thesis that a defendant's own alibi testimony is subject to exclusion to the same extent as the testimony of other witnesses. State v. Francis, supra, 128 N.J. Super. at 351.
We expressed the view that the trial court should have done more to explore and to resolve the question of whether the State would have been unfairly surprised or disarmed by defendant's testifying with an alibi and if so whether that disadvantage might have been redressed by a reasonable continuance. We further stated that "[t]his is especially important where the alibi witness is the defendant himself and the detriment to his defense because of his inability to testify for himself is likely to be significant." Id. However, in Francis we also considered the fact that the defendant was able to testify that he was elsewhere when the shooting took place, and concluded that under all the circumstances, and in the context of the strong evidence of guilt, there was no mistaken exercise of discretion. So, here. As indicated above, Gonzalez had already presented to the jury his contention that he was not at the scene, an explanation that he had not been in Paterson since June or July when he was arrested on the bus, and his contention that he did not know either of the two codefendants until well after the crime.
Thus, he was not precluded from testifying. Rather his testimony in a limited area was conditioned upon compliance with our Rules of Court.
As the Supreme Court observed in Taylor, rules such as R. 3:11 involve a broader public interest beyond the State's interest in protecting itself against last minute defenses:
... The mere invocation of that right [to offer testimony] cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence; the interest in the fair and efficient administration of justice; and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance. [Taylor v. Illinois, supra, ___ U.S. at ___, 108 S.Ct. at 655]
There would be no deterrence, and no need for defendants to cooperate in the discovery process, if every violation resulted in *389 an automatic continuance or mistrial. "Defendants who are willing to fabricate a defense may also be willing to fabricate excuses for failing to comply with a discovery requirement." Id. at ___, 108 S.Ct. at 655.
We emphasize that we do not sanction routine use of the preclusion sanction. Neither do we view preclusion to be tantamount in this case to a denial of the right to testify. There is a substantial difference between a denial of right to testify, and the conditioning of that right to testify (just as there are evidential and procedural conditions in all trials) upon the reciprocal obligations and benefits afforded by R. 3:11. See Comment, "Alibi Notice Rules: The Preclusion Sanction as Procedural Default," 51 U.Chi.L.Rev. 254 (1984).
As the Supreme Court of Wisconsin has recently stated:
The [alibi] statute does not deny the defendant the right to testify, but rather, only requires that if he is going to claim not to have been at the scene of the crime, then he must notify the state where he was. That is not a denial of a right to testify; it is only a reasonable requirement needed to achieve orderly trials and procedures. We have eliminated surprise as much as possible in civil and criminal trials in Wisconsin by their respective discovery statutes. If the defendant files a notice of alibi as required, he is not restricted as to testifying or calling noticed witnesses. In fact, he can abandon his alibi if he wishes by not using it at trial and not suffer negative consequences.
If the defendant were allowed to testify even though he did not file a notice of alibi, problems could be caused for the jury. If the defendant claimed he was with other persons at another location at the time of the offense, the jury logically might want to hear those identified persons testify as to the truthfulness of the defendant's claim. If those persons did not then testify, the jury would be in a quandry [sic] and no instructions could alleviate its questions without prejudice to the defendant or the state.
[State v. Burroughs, 117 Wis.2d 293, 344 N.W.2d 149, 155-156 (1984)]
The court added that a defendant's right to testify is subject to reasonable limitations; he has no right to testify untruthfully or in defiance of notice requirements. Id. 344 N.W.2d at 156. See also, State ex rel Simos v. Burke, 41 Wis.2d 129, 163 N.W.2d 177 (1968); Lake v. State, 257 Ind. 264, 274 N.E.2d 249, 252 (1971); State v. Smith, 17 Ohio St.3d 98, 477 N.E.2d 1128, 1153 (1985).
*390 Our view is not without its detractors. Compare, e.g., Alicea v. Gagnon, 675 F.2d 913 (7th Cir.1982); People v. Hampton, 696 P.2d 765, 775 (Colo. 1985); U.S. ex rel Robinson v. McGinnis, 593 F. Supp. 175, 183 (C.D.Ill. 1984), aff'd 753 F.2d 1078 (7th Cir.1985), cert. den. 471 U.S. 1116, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985); People v. Merritt, 396 Mich. 67, 238 N.W.2d 31, 40 (1976); State v. Hibbard, 273 N.W.2d 172, 174 (S.D. 1978). We note, however that even in Alicea, the court held that the error was harmless in view of the evidence against the defendant, and the fact that the defendant managed to testify to the substance of his alibi.
The unifying concept in the cases is a focus on what approach is best calculated to enhance the search for truth. The dividing issues, we perceive, are whether there is an absolute right for a defendant to testify no matter what salutary conditions are breached, and differing concepts of the extent and significance of adding to prosecutorial burdens late in the game.
We perceive a marked difference between the State's burden and investigatory efforts necessary to place a defendant at the scene of a crime, and the task of disproving a contention that he was at a different specific location, made after a long passage of time and in the midst of trial. It is insufficient to say that the State cannot be prejudiced by a surprise alibi because it always has the burden of establishing a defendant's presence. Until the alibi situs is identified, how can it be investigated? And if not until trial, why have a rule?
We think that the New Jersey balancing philosophy embodied in State v. Francis, supra, finds both jurisprudential and constitutional reinforcement in Taylor and Williams. "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." Williams v. Florida, 399 U.S. 78, 82, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970). There are instances in which alternative sanctions "would perpetuate rather than limit the prejudice to the State and the harm to the *391 adversary process." Taylor v. Illinois, supra, ___ U.S. at ___, 108 S.Ct. at 655. The Taylor court plainly rejected the contention that every preclusion must distort the truth-seeking process.
We are satisfied that in the present case, the limited preclusion of Gonzalez' unsubstantiated alibi was neither improper nor sufficiently prejudicial to warrant reversal.

INEFFECTIVENESS OF COUNSEL
On an unopposed application by Gonzalez' present attorney in November 1986 we granted leave to supplement the record with affidavits from Gonzalez and his mother. Essentially the affidavits, executed in October 1986, say (1) that Gonzalez was at home in the Bronx with his mother between 10:30 p.m. August 24, 1984 and 5:30 a.m. August 25, 1984 and (2) that Gonzalez' trial attorney never asked either about an alibi. Gonzalez' mother stated that she was available to testify at the time of trial. Based principally on his attorney's alleged failure to make inquiry about an alibi, Gonzalez asserts that he was deprived of effective assistance of counsel.
In response, the State was also permitted to supplement the record with an affidavit of the trial defense attorney who no longer recalled details of the case, two years after his first interview with Gonzalez. His files reflected no indication that defendant advised him of an alibi-defense, nor any approach by defendant's mother to advise of an alibi.
It is clear that we cannot resolve such factual issues, affecting the question of adequacy of representation, on affidavits presented for the first time on appeal.[4] However, our determination of Gonzalez' arguments respecting the limited preclusion of his alibi, as well as our review of the record presented, satisfies us that were the ineffectiveness issue confined *392 to failure to inquire about or give notice of Gonzalez' unsupported alibi, there would be no basis for such claim. Counsel's performance generally was competent and not deficient. Moreover, the alleged deficiency, when limited to Gonzalez' personal alibi, was not sufficiently serious to deprive defendant of a fair trial or demonstrate an unreliable result resulting from breakdown in the adversary process. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).
The Strickland standard of ineffectiveness requires us to find "a reasonable probability that absent the errors," [here alleged] "the fact finder would have had a reasonable doubt respecting guilt." Strickland v. Washington, supra, 466 U.S. at 695, 104 S.Ct. at 2068 (Emphasis supplied).
Courts in other jurisdictions have rejected an ineffectiveness claim where defendant had never told counsel about two alibi witnesses:
... [K]nowledge of the existence of alibi witnesses was peculiarly within the knowledge of the defendant himself. If he failed to cooperate with counsel by informing him of their existence, then he cannot now complain that counsel did not know of them.
[People v. Elder, 73 Ill. App.3d 192, 29 Ill.Dec. 140, 148, 391 N.E.2d 403, 411 (App.Ct. 1979)]
Accord, State v. Glover, 355 S.E.2d 631, 636 (W. Va. 1987).
Although we have no hesitancy in rejecting the claim of ineffective counsel based on the unsupported Gonzalez alibi, we must consider separately the question of the probable impact upon the jury of the supporting alibi testimony of his mother. Assuming that an appropriate fact finder (see State v. Walker, 80 N.J. 187 (1979)) were to find that trial counsel never asked Gonzalez where he was at the time of the crime, or whether there were witnesses to the alibi, and that Gonzalez' mother would have borne out his story, would this have "probably" turned the tide? We think not.
*393 Notwithstanding lack of identification by the victim and the "Rashomon" nature of the crime versions told by the State's witnesses, the evidence against Gonzalez was strong. Apart from the implicating testimony of his codefendants, the jury was able to evaluate his own testimony and credibility, and to consider the unusual coincidence of this Bronx resident's strong links to Paterson, and his apprehension one day later, in the company of Santiago, with a live shotgun round in his pocket. In our view, the added alibi testimony of his mother, who could scarcely be deemed disinterested, would not have elevated his case to one having a reasonable probability of a different result.
In consequence it is not necessary to consider appropriate procedures for evaluation and amplification of the supplementary affidavits.

THE SENTENCE
Gonzalez was sentenced to the presumptive term of 15 years for a first offense. The court correctly determined that mitigating factors did not preponderate. There was no "grievous inequity" between his sentence, and the sentence of the codefendants (see, State v. Hicks, 54 N.J. 390, 391 (1969)) who were eligible to receive mitigating consideration by reason of their cooperation with law enforcement authorities. N.J.S.A. 2C:44-1b.(12). The Graves Act (N.J.S.A. 2C:43-6c) required imposition of a minimum parole ineligibility period at or between one-third and one-half of the presumptive sentence imposed. Gonzalez thus received the lowest sentence possible, consistent with the trial judge's proper findings on the mitigating/aggravating factor balance. He was not entitled to a youthful offender sentence. State v. Des Marets, 92 N.J. 62, 455 N.E.2d 1074 (1983).
Affirmed.
NOTES
[1] R. 3:11-1 provides:

If a defendant intends to rely in any way on an alibi, he shall, on written demand of the prosecuting attorney and within 10 days thereafter, furnish a written bill of particulars, signed by him, stating the specific place or places at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi. Within 10 days after receipt of such bill of particulars from the defendant, the prosecuting attorney shall, on written demand, furnish the defendant or his attorney with a written bill of particulars stating the names and addresses of the witnesses upon whom the State intends to rely to establish defendant's presence at the scene of the alleged offense. The trial court may order the amendment or amplification of such particulars, or of the time of their service, as the interest of justice requires.
R. 3:11-2 provides:
If such bill of particulars is not furnished as required, the court may refuse to allow the party in default to present witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense, or make such other order or grant such adjournment as the interest of justice requires.
[2] See Escalera v. Coombe, 652 F. Supp. 1316, 1324 (E.D.N.Y. 1987), rev'd 826 F.2d 185 (2d Cir.1987). The 2d Circuit opinion was rendered prior to Taylor v. Illinois, ___ U.S. ___, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Compare Hackett v. Mulcahy, 493 F. Supp. 1329 (D.N.J. 1980). Neither Escalera nor Hackett involved a failure to give notice of alibi until defendant was in the midst of testifying.
[3] Gonzalez was permitted to supplement the record with affidavits by himself and his mother, which were not before the trial judge.
[4] See State v. Walker, 80 N.J. 187, 194 (1979).