**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0026-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARK LOVETT,

    Defendant-Appellant.

_____

Argued January 6, 2025 – Decided July 7, 2025

Before Judges Sabatino and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-03-0526.

David A. Gies, Designated Counsel, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; David A. Gies, on the briefs).

Lucille M. Rosano, Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Essex County Prosecutor, attorney; Lucille M. Rosano, of counsel and on the brief).

PER CURIAM

Defendant Mark Lovett appeals from an order denying his petition for post-conviction relief (PCR), which the PCR judge entered after conducting an evidentiary hearing. Defendant claims his trial counsel rendered ineffective assistance by failing to conduct a pretrial investigation of defendant's location at the time the crimes of which he was convicted were committed. In particular, he faults trial counsel for failing to interview two people and to analyze cellular telephone data the State had provided during discovery. After hearing testimony from several witnesses, including defendant, his trial counsel, a digital forensic examiner, and the two individuals defendant contended counsel should have interviewed, the PCR judge held defendant had failed to establish counsel's performance was deficient under either prong of the standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted under our State Constitution by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Perceiving no error in the denial of defendant's petition, we affirm.

I.

The facts in this case are set forth in detail in our opinion addressing defendant's direct appeal, and we incorporate them by reference. State v. Lovett,

2

No. A-2572-14 (App. Div. June 27, 2017). We highlight the following facts particularly relevant to this appeal.

A drive-by shooting that took place in the City of Orange around 1:00 a.m. on May 27, 2012, resulted in the death of one victim and the wounding of another. A grand jury charged defendant and his co-defendant with first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and 2C:11-3(a)(1) and (2); first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); two counts of first-degree attempt to commit murder, N.J.S.A. 2C:5-1 and 2C:11-3(a)(1) and (2)[1]; third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).

Defendant was tried separately from his co-defendant in 2014. During a recorded interview taken two days after the shooting, an eyewitness to the shooting identified defendant by name as the shooter. A portion of the recorded statement was played for the jury during the trial. The witness recanted his statement at trial.

Defendant was acquitted of conspiracy to commit murder and was convicted of aggravated manslaughter as a lesser-included offense of first-

---

[1] The court subsequently granted the State's motion to dismiss one of the counts of first-degree attempt to commit murder.

3

degree purposeful or knowing murder, third-degree aggravated assault as a lesser-included offense of attempted murder, and the weapons offenses. After merging some of the convictions, the court sentenced defendant to an aggregate thirty-one-year term of imprisonment. We affirmed the convictions and sentence and remanded for correction of some errors in the judgment of conviction. Lovett, slip op. at 15. The Supreme Court denied defendant's petition for certification. State v. Lovett, 231 N.J. 562 (2017).

On January 18, 2019, defendant filed a PCR petition, asserting he had been deprived of his Sixth Amendment right to effective assistance of trial and appellate counsel. The PCR judge, who had presided over the trial, held an evidentiary hearing that took place over several days in 2022 and 2023. During the hearing, defendant testified and presented testimony from his trial attorney, someone who was a purported girlfriend and alibi witness, a cab driver who was an alleged alibi witness, and an expert witness in the field of "[d]igital forensic cell phone tower locations." The State called defendant's private detective and the homicide victim's mother as rebuttal witnesses.

The trial attorney recalled only some aspects of defendant's trial but believed he would have argued defendant had no motive to commit the crime based on the State's lack of motive evidence. He testified that at trial he also

had argued the eyewitness had not identified defendant in his trial testimony and the State had presented no physical or forensic evidence associating defendant with the crime. The attorney did not specifically recall if he had discussed potential witnesses with defendant but testified that "in every case without fail" he asks his clients to identify alibi witnesses who could testify truthfully that the client was not at the scene of the crime as alleged by the State. He testified that in accordance with his usual practice, if defendant had identified any witnesses, they "would have had further discussions" and he "would have tried to evaluate whether any potential witnesses were ready, willing, able or [if] it would be of good strategy to present alibi witnesses" at trial. Based on his experience, "presenting a bad alibi witness or an unbelievable alibi witness might be more devastating to a client than presenting no failed alibi witness."

The attorney remembered having "some cell phone records" before trial but he did not recall having an expert witness review them. According to the attorney, after speaking with defendant, he "presented the defense that [they] both agreed [they] should present, which was to fight the State's case . . . [w]ithout calling any witnesses."

Defendant's purported girlfriend described defendant as someone she had dated in 2012, though she knew him by a nickname and did not know his actual

name. She testified defendant had come to her apartment in Newark on May 27, 2012, at around 12:50 a.m. and stayed with her there for eight to ten minutes before leaving around 1:00 a.m. She stated she was alone and defendant had come over to have sex with her, but they did not have sex before he left. She testified she had not been contacted by defense counsel before defendant's trial and no one had asked her to testify at the trial.

According to the girlfriend, she did not learn defendant had been arrested until 2019, when someone – she did not recall the person's name – who was in a group of people in a bodega mentioned it to her. She later received a call from someone telling her to go to a detective agency. She went to the agency and answered some questions. The testimony she gave at the evidentiary hearing was not consistent with the information she had provided to the detective.

The private detective testified he had taken a statement from the girlfriend in 2019. According to the detective, the girlfriend told him defendant had arrived at her apartment at 12:42 a.m. on May 27, 2012; she was not alone but was home with her children; and she and defendant had sex before he left at about 1:00 a.m.

The cab driver testified that on May 27, 2012, he had picked up defendant, whom he knew by his nickname, in the City of Orange sometime around 12:15

6

a.m. to 12:30 a.m. and had driven him in fifteen to twenty minutes to an apartment building in Newark. According to the cab driver, after five to fifteen minutes, defendant returned to the cab, the cab driver took him to a drive-through restaurant, and about forty minutes later dropped him off in Bloomfield.

The cab driver testified he had attended the wake of the homicide victim, whom he described as one of his "VIP client[s]." But he also testified he did not learn defendant was "in[] trouble" until defendant's mother had told him sometime in 2015 to 2017 defendant was in jail. He testified someone from the detective agency had called him in 2020, but he did not know how the agency had obtained his name or phone number.

The homicide victim's mother testified her son never had a "VIP" cab driver and would not have needed one because he had access to a car. She also denied the cab driver had attended her son's wake but conceded on cross-examination it was impossible to know everyone who was there.

Before the expert witness testified, defense counsel advised the judge the digital-forensics company retained by defendant had not sent the person who had authored the report at issue to testify but instead had sent "a different engineer." Defense counsel informed the judge the witness would "testify as to the cell tower locations" but was "not offering opinions as to a reasonable degree

7

of . . . engineering certainty." The witness testified he had examined cell-phone tower records for the date of the shooting for two cell phone numbers. He admitted he had not confirmed the subscriber information for the numbers provided to his company. He explained that based on the cell-phone tower records, he was unable to determine an exact location of a cell phone associated with those numbers on the night of the shooting but testified that the information in the records was consistent with the posed hypothetical of the person possessing the cell phone being in the Newark apartment complex at approximately 1:00 a.m. and at the drive-through restaurant at about 1:15 a.m. He acknowledged the cell-tower information might "contain a percentage of false/positive[s]." The expert had not examined the phone that was in evidence before he testified. He subsequently examined the phone but, as defense counsel later advised the judge, he found the phone's SIM card had been removed, and he consequently was unable to obtain any additional information from the phone.

Defendant testified he and his trial attorney had met and reviewed his discovery materials, including his cell-phone records, several times in preparation for the trial. According to defendant, he asked the attorney to obtain a cell-phone expert and the attorney told him he was going to "look into it."

8

Defendant testified he had learned counsel had not obtained an expert when he saw the witness sheet at trial. Defendant stated he then asked counsel why he did not obtain an expert, but he did not recall counsel's response.

Defendant also testified he had told his trial attorney about the two purported alibi witnesses and had asked him to "look into" those witnesses and to try to "get tape" from the drive-through restaurant. He thought counsel had hired an investigator to look into the witnesses and obtain the tape. He asserted he had asked counsel approximately fifty times to investigate the witnesses. According to defendant, he learned the defense was not calling any witnesses when he saw the witness sheet at trial. Defendant testified that if he had been able to obtain a cell-phone expert and statements of the purported alibi witnesses, he would have used them at trial.

The PCR judge denied defendant's petition in an order he entered and a decision he placed on the record on June 27, 2023. The judge concluded defendant had failed to show trial counsel's performance was deficient or that he had been prejudiced by the alleged deficient performance. Consequently, the judge found defendant had failed to satisfy either prong under the Strickland/Fritz standard for ineffective-assistance-of-counsel claims.

In his opinion, the judge made express credibility determinations. He found defendant's trial attorney credible and that the attorney had honestly testified about what he reasonably could or could not remember from a trial that had taken place many years before. Characterizing the case against defendant as having "more to do with identification of the defendant than it [had] to do with the possibility of raising an alibi," the judge found "[c]ounsel's fear that a weak alibi could cause more harm than good is a type of strategic decision that should not be second guessed on appeal."

The judge did not find the girlfriend to be a credible witness, citing her lack of knowledge of defendant, the discrepancies between her testimony and the statements she had made to the private detective, and that after the night of the shooting she did not learn what had happened to defendant until she was in a bodega seven years later discussing him with people she could not identify at the hearing. The judge also found the cab driver not credible, noting he had recalled details particular to defendant's purported alibi but not information regarding streets and addresses an experienced cab driver would remember. The judge found credible the testimony of the victim's mother rebutting the cab driver's assertions regarding his relationship with the victim. The judge believed the purported alibi witnesses' specific recollection of details helpful to defendant

10

and lack of recollection of other information "call[ed] in serious question" whether they had been coached in their testimony.

The judge did not find the expert witness credible. The judge noted the witness had not acted on available information, such as contacting the cell service provider to obtain information available to the provider; had not testified that the programs he used to obtain the cell-phone tower information were reliable or standard in the industry; had relied on information that was not certified to be complete; was unable to certify the accuracy of any of the results; and had conceded he could not determine the exact location of the cell phone on the night of the shooting. The judge did not believe the witness would have been qualified as an expert pursuant to a Rule 104 hearing at trial or that, if he testified, he would have "provided a reasonable doubt in the jury's mind . . . ."

The judge found defendant had not testified the phone was in his possession at the time of the shooting, had not denied shooting the victims, had not been truthful about his discussions with trial counsel, and had not established trial counsel was aware of the existence of the alleged alibi witnesses. The judge also found defendant had failed to satisfy his burden under Rule 3:22-4(a) because he had asserted he knew about the witnesses and cell-phone records before trial.

11

The judge concluded defendant had failed to establish trial counsel was aware of the existence of the "newly-proffered" witnesses and, thus, had failed to establish trial counsel's performance was deficient. The judge also found defendant had failed to establish he was prejudiced by the alleged deficient performance. Accordingly, the judge denied defendant's petition.

This appeal followed. Defendant presents the following arguments for our consideration.

> POINT ONE
>
> GIVEN THE STATE'S LESS THAN OVERWHELMING PROOFS, DEFENDANT WAS PREJUDICED BY HIS TRIAL ATTORNEY'S FAILURE TO CALL TWO WITNESSES WHOSE TESTIMONY RELATED TO A MATERAL FACT IN THE CASE.
>
> POINT TWO
>
> A FUNDAMENTAL INJUSTICE RESULTED BY THE FAILURE OF DEFENDANT'S TRIAL ATTORNEY TO CONDUCT A PRETRIAL ANALYSIS OF THE CELLULAR TELEPHONE DATA PRODUCED BY THE STATE AS DISCOVERY.

Unpersuaded by those arguments, we affirm.

12

II.

When a PCR court has held an evidentiary hearing and has made "factual findings based on live testimony, an appellate court applies a deferential standard; it 'will uphold the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). We defer to the PCR judge's credibility determinations of a witness the judge had the opportunity to observe firsthand. Ibid. We give that deference because the judge had the "opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." State v. Nuñez-Valdéz, 200 N.J. 129, 141 (2009) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

We uphold a PCR court's findings on appeal that are "supported by sufficient credible evidence in the record." Nash, 212 N.J. at 540. In addition, when a jury verdict has been upheld on appeal, the decision "should not be disturbed except for the clearest of reasons." Id. at 541 (quoting State v. Ways, 180 N.J. 171, 187 (2004)). Although we give deference to the factual and credibility determinations of a PCR judge, we do not defer to the judge's interpretation of law, which we review de novo. Id. at 540-41; see also State v. L.G.-M., 462 N.J. Super. 357, 365 (App. Div. 2020).

A-0026-23

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee defendants in a criminal proceeding the right to the assistance of counsel in their defense. The right to counsel requires "the right to the effective assistance of counsel." Nash, 212 N.J. at 541 (quoting Strickland, 466 U.S. at 686) (internal quotation marks omitted).

To establish a prima facie case of ineffective assistance of counsel, a defendant must show a "reasonable likelihood" of success under the two-prong test outlined in Strickland. State v. Preciose, 129 N.J. 451, 463 (1992); see also Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 58. The Strickland test requires that defendant show (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment" and (2) counsel's "deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687); see also State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023). "With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012); see also State v. Young, 474 N.J. Super. 507, 516 (App. Div. 2023). If a defendant fails to sustain his burden under either

14

prong of the standard, a defendant's ineffective-assistance-of-counsel claim fails. Strickland, 466 U.S. at 687.

Under the first prong, a defendant must show "counsel's acts or omissions fell outside the wide range of professionally competent assistance considered in light of all the circumstances of the case." State v. Allegro, 193 N.J. 352, 366 (2008) (quoting State v. Castagna, 187 N.J. 293, 314 (2006)). Our analysis under the first prong is highly deferential to counsel. State v. Arthur, 184 N.J. 307, 318 (2005); see also State v. Fisher, 156 N.J. 494, 500 (1998) (finding "[u]nder the first prong of the [Strickland] test, counsel's performance is to be reviewed with 'extreme deference . . . .'" (quoting Fritz, 105 N.J. at 52)). When "applying the first [Strickland] prong, courts are required . . . 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Fisher, 156 N.J. at 500 (quoting Strickland, 466 U.S. at 689).

There is "'a strong presumption' that [counsel] provided reasonably effective assistance" and counsel's "decisions followed a sound strategic approach to the case[,]" Pierre, 223 N.J. at 579 (quoting Strickland, 466 U.S. at 689), even when a strategic decision turns out to be a mistake, State v. Buonadonna, 122 N.J. 22, 42 (1991). A defendant may rebut the presumption

of effectiveness by proving trial counsel's actions were not "sound trial strategy." Arthur, 184 N.J. at 319 (quoting Strickland, 466 U.S. at 689).

Under the second Strickland prong, a defendant must "affirmatively prove" "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Gideon, 244 N.J. 538, 551 (2021) (quoting Strickland, 466 U.S. at 693). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694). Proof of prejudice under Strickland's second prong "is an exacting standard." Ibid. (quoting Allegro, 193 N.J. at 367).

An ineffective-assistance-of-counsel claim may be established "when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352 (2013). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "Failure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353; see also Pierre, 223 N.J. at 582-88 (holding that counsel's presentation of an alibi defense was

16

deficient and prejudicial because he failed to interview known, key witnesses who could have bolstered that defense and "chose to forego evidence that could have reinforced that alibi," entitling defendant to a new trial).

Given the deferential standard we apply[2] and the record developed during the evidential hearing, we do not have a basis to reject the judge's determination that defendant failed to establish ineffective assistance of counsel based on the purported alibi witnesses. The judge found credible trial counsel's testimony and incredible the testimony of defendant and the purported witnesses. Trial counsel credibly testified that "in every case without fail" he asks his clients to identify alibi witnesses and that if defendant had identified any witnesses, they "would have had further discussions" and he "would have tried to evaluate whether any potential witnesses were ready, willing, able or [if] it would be of good strategy to present alibi witnesses" at trial.

Considering that credible testimony and the incredible testimony of the other witnesses presented, the judge reasonably rejected defendant's testimony

---

[2]    Defendant suggests we should not defer to the judge's credibility determinations because the judge made minor errors in recounting details of some of the testimony presented. Those minor errors are not enough to overcome the presumption of deference to the judge's overall assessment of credibility. And even if they were, we would reach the same conclusions as to credibility based on the record before us.

A-0026-23

he had told counsel about the purported alibi witnesses and concluded defendant had failed to establish trial counsel knew about the purported alibi witnesses before they were identified in this PCR petition. Not knowing about the witnesses, he could not have investigated them. See State v. Gonzalez, 223 N.J. Super. 377, 392 (App. Div. 1988) (finding "[T]he existence of alibi witnesses [is] peculiarly within the knowledge of the defendant himself. If he failed to cooperate with counsel by informing him of their existence, then he cannot now complain that counsel did not know of them." (quoting People v. Elder, 391 N.E.2d 403, 411 (Ill. App. Ct. 1979))).

We also perceive no basis to disturb the judge's conclusion defendant failed to establish the second prong of the Strickland test. The trial attorney credibly testified that, had defendant told him about the purported alibi witnesses, he would have evaluated whether the witnesses were able to testify truthfully defendant was not at the scene of the crime and that, based on his experience, "presenting a bad alibi witness or an unbelievable alibi witness might be more devastating to a client than presenting no . . . alibi witness." Having heard the testimony of the purported alibi witnesses, the PCR judge concluded they were not credible – a conclusion we readily understand even on the basis of the "cold record" before us. Nash, 212 N.J. at 540. On that record,

defendant did not demonstrate that had he interviewed them, trial counsel would have or should have called them as trial witnesses. He also did not demonstrate "a reasonable probability" that had the purported alibi witnesses testified at trial, "the result of the proceeding would have been different." Gideon, 244 N.J. at 551 (quoting Strickland, 466 U.S. at 693).

We reach the same conclusion as to the expert witness. Given the limitations of and deficiencies in his testimony and defendant's testimony, defendant failed to establish by a preponderance of the credible evidence presentation of the cell-phone tower evidence would have altered the result of the trial.

Based on the record presented, including the testimony given at the evidentiary hearing, we discern no error in the judge's determinations that defendant failed to sustain his burden under the Strickland standard to establish his ineffective-assistance-of-counsel claim. We therefore affirm the June 27, 2023 order denying defendant's PCR petition. Because we conclude defendant failed to meet the Strickland standard, we do not address defendant's argument regarding the judge's finding he also was procedurally barred from bringing this petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19                                                                      A-0026-23