950 A.2d 889

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. DARREN
L. BRADSHAW, DEFENDANT–RESPONDENT.

Argued March 25, 2008—Decided July 10, 2008.

*Jeanne Screen,* Deputy Attorney General, argued the cause for appellant (*Anne Milgram,* Attorney General of New Jersey, attorney).

*Stephen P. Hunter,* Assistant Deputy Public Defender, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney).

Justice WALLACE, JR., delivered the opinion of the Court.

In this appeal, we address whether the trial court properly refused to allow defendant to give alibi testimony based on his failure to provide timely notice of his alibi to the State under *Rule* 3:12–2. We also consider whether the prosecutor's summation was fair when he expressed his opinion that because the victim was deaf and mute, she had a heightened sensory perception and therefore her identification of defendant was reliable.

The Appellate Division held that the trial court violated defendant's constitutional rights when it declined to allow him to offer alibi testimony and that it was plain error for the prosecutor to essentially vouch for the reliability of the victim's identification. We affirm the judgment of the Appellate Division but for different

reasons. We conclude that the trial court abused its discretion when it denied defendant from fully presenting his alibi testimony; consequently, we need not reach the constitutional issue. We also hold that the prosecutor should not have commented on facts outside of the record.

## I.

The State presented evidence to show that on the night of April 26, 2000, S.D., a forty-year-old deaf and mute woman was walking home from a friend's house late at night. She was high on heroin at that time. A bicyclist, later identified as defendant, approached S.D. from behind, threw down his bicycle, and pulled her to the ground. Despite S.D.'s screams and attempts to fight defendant off, defendant reached inside S.D.'s pockets, pulled down her pants, and sexually assaulted her. Following the attack, defendant apologized and rode away on his bicycle.

S.D. ran to two nearby houses gesturing for help, but no one assisted her. Finally, she noticed a police car and motioned for it to stop. Officer Ronald Fusco assisted S.D., who was "hysterical" and "covered in dirt," with cuts and bruises to her face. After Fusco realized that S.D. was mute, he gave her some paper on which she could communicate with him. At some point, it became apparent to Fusco that S.D. was also deaf and was reading his lips to understand his questions. S.D. related the incident and described her attacker as a black male, five feet six inches, with a stocky build, wearing a yellow and green "mix" jacket and a black hat. Fusco broadcasted the description of the attacker over his police radio and then drove S.D. to the hospital. The hospital staff examined S.D. and prepared a sexual assault examination.

Early the next morning, the police formed a task force to conduct surveillance in the area where the attack occurred. That afternoon, S.D. went to the police station, and, aided by an interpreter, she described her attacker to a sketch artist. Later, S.D. admitted she was high on heroin at the time that she gave that description.

That night, the police arrested a man in the area of the attack, but quickly determined that he did not meet the description of the attacker. The police then continued surveillance. On April 30, 2000, at 3:45 a.m., the police spotted a man riding a bicycle in the area near where the assault took place who fit the description of the attacker. Detective Daniel Passerelli responded to the area and observed defendant circle the block. Passerelli then pulled his marked police car alongside of defendant and asked if defendant would stop to speak with him. Defendant agreed. In response to Passerelli's questions, defendant explained that he was heading home from a friend's house and had not made any detours. When Passerelli replied that he had seen him ride around the block, defendant apologized for lying. After Passerelli determined that there were no outstanding warrants on defendant, he allowed defendant to leave.

The next morning, May 1, 2000, Detective Caminiti included defendant's photograph in a photo array. S.D. viewed the array and identified defendant as her attacker. Passerelli then obtained an arrest warrant for defendant and a search warrant for his residence, as well as an order to compel defendant to provide blood and saliva samples for DNA testing. The police arrested defendant at his home and seized items of clothing and his bicycle. After waiving his *Miranda*[1] rights, defendant admitted he had consensual sex with S.D. on a high school field "about a week ago." Defendant refused, however, to provide a written statement.

At some point, one of the vaginal swabs taken from S.D. during her sexual assault examination tested positive for semen. The police then sent two other vaginal swabs, a stain from S.D.'s underwear, and blood swatches from defendant and S.D. to Cellmark Diagnostics for DNA analysis. Robin Cotton, the Forensic Laboratory Director of Cellmark Diagnostics, testified as an expert on the findings of the DNA analysis. She reviewed the DNA test results and agreed that defendant's DNA matched the DNA

---

[1] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

recovered from the vaginal swabs and S.D.'s underwear. She acknowledged that there were gene numbers found in the sample that could not be attributed to either S.D. or defendant, but denied that those gene numbers were anything other than "stutters"—a result of contamination of the samples.

Shortly before the State presented its final witness, defense counsel informed the trial court that defendant planned to testify. The court asked counsel to outline the substance of that testimony. Defense counsel replied that defendant would testify that he "is not the person." With counsel's permission, the court asked defendant whether he was going to testify that he had an alibi or that he was someplace else when the alleged rape took place. Defendant answered that he planned to testify that he was someplace else at the time, and added that he would not testify that he had consensual sex with the victim.

At this point, defense counsel objected to the court's line of questioning. After the prosecutor raised the lack of notice of alibi pursuant to *Rule* 3:12-2, counsel engaged in a lengthy colloquy with the court regarding the admissibility of defendant's testimony. Defense counsel urged that defendant was not presenting an alibi and that alibi notice was only required if the defense planned to present witnesses to confirm defendant's story. As an alternative, defense counsel suggested that the court should allow the testimony to determine whether the State was prejudiced and some accommodation should accordingly be given to the State, or if necessary, whether a mistrial was appropriate.

The State argued that defendant's proffered testimony constituted an alibi and, if admitted, the State would ask to strike it or alternatively would need time to investigate the details of defendant's claims. Following a recess, however, the prosecutor reconsidered and asked the court to wait until defendant testified to determine whether or not to grant the State more time to try to investigate his alibi.

The court concluded that the State would be prejudiced if defendant was permitted to present his proffered testimony. Con-

sequently, it ruled that defendant was precluded from presenting his alibi.

After the State presented its final witness, defense counsel indicated that defendant still wanted to testify. During a colloquy prior to defendant's testimony, the court warned defendant not to testify to his alibi. Additionally, the court approved the prosecutor's use of defendant's multiple criminal convictions dating back to 1991 through 1996 to impeach him. Thereafter, defendant testified that he never saw the victim before trial, that he never had sexual intercourse with her, and that he never made a statement to the police that he had consensual intercourse with her.

After defendant completed his case, the State called Passerelli in rebuttal. Passerelli reiterated that defendant admitted to having consensual sex with S.D. He related that on May 2, 2001, sometime around 10:00 a.m., he was informed that defendant wished to speak with him regarding his case. Passerelli read defendant his *Miranda* rights. After defendant signed a waiver, he agreed to answer questions. Passerelli testified that at that point, defendant claimed that he had consensual sex with S.D. at her behest.

The jury found defendant guilty of first-degree aggravated assault, second-degree sexual assault, and second-degree robbery. The trial court sentenced defendant to an aggregate sixty years with a twenty-five year parole disqualifier.

The Appellate Division reversed in a published opinion. *State v. Bradshaw*, 392 *N.J.Super.* 425, 920 *A.*2d 1228 (2007). The panel initially concluded that some of the prosecutor's comments made during summation were clearly capable of producing an unjust result. *Id.* at 437–39, 920 *A.*2d 1228. Specifically, the panel found that the prosecutor's comments that people with handicaps had heightened sensory perception, and "that S.D. was 'a lifelong 40–year old trained observer' who, because of her disability 'has to be able to observe things,' and whose 'whole world is about her ability to recognize things,'" were inappropriate and violated defendant's

right to a fair trial. *Id.* at 437, 920 *A.2d* 1228. Additionally, the panel concluded that the "unique position occupied by the defendant in a criminal trial is such that his testimony on the critical issue of his whereabouts at the time of the crime cannot be forfeited without doing substantial damage to, and thereby undermining, his constitutional right to testify in his own defense." *Id.* at 446–47, 920 *A.2d* 1228. For that reason, the panel concluded that the exclusion of defendant's alibi testimony was not harmless. *Id.* at 447, 920 *A.2d* 1228.

We granted the State's petition for certification. 192 *N.J.* 481, 932 *A.2d* 31 (2007).

## II.

The State argues that the Appellate Division erred in declaring the notice-of-alibi rule unconstitutional as applied to a defendant's own testimony. The State explains that our judicial system provides for broad reciprocal discovery and that our case law authorizes the State to receive in advance the evidence that a defendant intends to use at trial to avoid surprise claims that cannot be investigated prior to trial. The State urges that the appropriate test for preclusion of a defendant's undisclosed alibi testimony is the four-part balancing test applied in *State v. Gonzalez,* 223 *N.J.Super.* 377, 538 *A.2d* 1261 (App.Div.), *certif. denied,* 111 *N.J.* 589, 546 *A.2d* 514 (1988), and *State v. Francis,* 128 *N.J.Super.* 346, 320 *A.2d* 173 (App.Div.1974). Applying that test, the State contends that the trial court properly precluded the alibi portion of defendant's testimony because the alibi, being unsubstantiated, was not crucial to the case, and because no other remedy could diminish the prejudice to the State that resulted from its inability to investigate defendant's claim. Finally, the State argues that the Appellate Division erred in holding that the prosecutor made improper comments in summation. It reasons that the prosecutor was responding to defense counsel's comments that the victim was a "heroin junkie" who was "under the influence of heroin" at the time of the crime, and that the reference to a

stronger sensory perception for people with a handicap was harmless, not even evoking an objection from defense counsel.

In contrast, defendant argues that the notice-of-alibi rule does not apply to his own testimony. Even assuming the rule's applicability, defendant contends that the interest of justice requires that his alibi testimony should be allowed because an application of the factors enumerated in *Francis* and *Gonzalez* tip the balance in favor of applying a sanction less severe than preclusion. Specifically, defendant submits that the State could not have been surprised by defendant's testimony because it logically had to have known that defendant would deny his presence at the scene if he took the stand to testify. In addition, he claims that the State would not have had to investigate defendant's claims because he planned to testify that he was alone in his home, but that even if additional investigation was necessary, a continuance would have been sufficient. Lastly, defendant argues that it was error for the prosecutor to impermissibly vouch for the reliability of the victim's testimony, and, without any evidentiary basis, suggest that people with handicaps have heightened sensory perception.

## III.

### A.

We turn first to *Rule* 3:12–2, the notice-of-alibi rule. That rule provides as follows:

(a) Alibi. If a defendant intends to rely *in any way* on an alibi, within 10 days after a written demand by the prosecutor the defendant shall furnish a signed alibi, stating the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi. Within 10 days after receipt of such alibi, the prosecutor shall, on written demand, furnish the defendant or defendant's attorney with the names and addresses of the witnesses upon whom the State intends to rely to establish defendant's presence at the scene of the alleged offense. The trial court may order such amendment or amplification as the interest of justice requires.

(b) Failure to Furnish. If the information required in paragraph (a) is not furnished, the court may refuse to allow the party in default to present witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense,

or make such other order or grant such adjournment, or delay during trial, as the interest of justice requires.

[*R.* 3:12–2 (emphasis added).]

In *State v. Angeleri,* this Court faced a constitutional challenge to a former alibi rule that required a defendant to furnish the names and addresses of the witnesses on which he or she intended to rely to establish his or her alibi. 51 *N.J.* 382, 241 *A.*2d 3 (1968) (per curiam). The defendant contended that disclosure of his witnesses would violate his privilege against self-incrimination. *Id.* at 384, 241 *A.*2d 3. The Court rejected that assertion because the alibi rule was "not designed to compel a defendant to say anything[, but r]ather it requires the specified pretrial disclosure if, but only if, the defendant plans to assert an alibi." *Id.* at 384–85, 241 *A.*2d 3. The Court quoted *State v. Baldwin,* 47 *N.J.* 379, 388, 221 *A.*2d 199, *cert. denied,* 385 *U.S.* 980, 87 *S.Ct.* 527, 17 *L.Ed.*2d 442 (1966), to explain the justification for the rule:

In calling upon a defendant to reveal a claim of that kind before trial, our rule is designed "to avoid surprise at trial by the sudden introduction of a factual claim which cannot be investigated unless the trial is recessed to that end." *State v. Garvin,* 44 *N.J.* 268, 272–273, 208 *A.*2d 402 (1965). Our rule replaced a statute, *R.S.* 2:190–7, adopted in 1934. As the statement annexed to the legislative bill recited, the purpose of that act was "to do away with the existing unfairness in criminal trials of a surprise alibi. . . ."

[*Id.* at 385, 241 *A.*2d 3.]

In answering the contention that the alibi might tend to incriminate the defendant, the Court explained that "[t]he Constitution does not protect a defendant from the consequences of the defense he [or she] makes, nor assure him [or her] a right so to defend as to deny the State a chance to check the truth of his [or her] position." *Ibid.*

The Court addressed a related discovery issue in *State v. Williams,* 80 *N.J.* 472, 404 *A.*2d 34 (1979). There, pursuant to the reciprocal discovery provision of *Rule* 3:13–3, the trial court required the defendant to give the State the photographs shown to the victim and the memoranda made by the defendant's representatives in their interview of the victim even though defense counsel did not intend to use that information during trial. *Id.* at 476, 404

*A.*2d 34. Following the receipt of that information, the State subpoenaed the defense counsel and his investigator to testify as witnesses for the State. *Ibid.* After the defendant's objection was denied, the defense counsel, to avoid testifying, stipulated to the facts surrounding the interview and placed the photographs into evidence. *Id.* at 476–77, 404 *A.*2d 34. The defendant was convicted. *Id.* at 477, 404 *A.*2d 34. The Appellate Division ruled that "the discovery rule did not extend to such material in [the] defense counsel's file [that] the defense did not intend to use at trial." *Id.* at 475, 404 *A.*2d 34.

This Court granted certification and affirmed. *Ibid.* The Court explained that the reciprocal discovery provision in our court rules was sound because the State was "entitled to know in advance what evidence a defendant intends to use at trial so that it may have a fair opportunity to investigate the veracity of such proof." *Id.* at 478, 404 *A.*2d 34. Nevertheless, the Court held that the rule "does not give the State access to statements or summaries of statements made by its witnesses to [the] defense counsel during defense preparation for trial if [the] defense counsel does not intend to use them at trial" because a contrary ruling "would infringe on a defendant's constitutional right to the effective assistance of counsel because of the chilling effect it would have on defense investigation." *Ibid.* In response to any fear on behalf of prosecutors that the Court's decision would lead to a defense counsel delaying a decision whether to use statements of a State's witness until trial, the Court stated that those "'mid-stream' decisions can be met by reference to [*Rule* ] 3:13–3(f)," *id.* at 481–82, 404 *A.*2d 34, which has been redesignated *Rule* 3:13–3(g) and "gives the trial court ample authority to remedy situations in which there has been a failure to disclose material which is, or which becomes, discoverable." *Id.* at 482, 404 *A.*2d 34.

Our Appellate Division has also addressed the alibi rule in several published opinions. In *Francis, supra,* the defendant failed to give notice of an alibi defense, prompting the State to move to prohibit either the defendant or other witnesses from

presenting alibi testimony. 128 *N.J.Super.* at 349, 320 *A.*2d 173. The defense counsel argued that the alibi rule only applied to defense witnesses and not to the defendant. *Ibid.* The trial court disagreed and denied the defendant the right to testify that he was present at some other place at the time of the offense. *Ibid.* On appeal, the panel, after noting that notice-of-alibi rules have withstood constitutional challenges, stated that the sanction of exclusion, while discretionary, is "tempered by what may be required in the interest of justice." *Id.* at 349–50, 320 *A.*2d 173 (quotations and citation omitted). The panel expressed that the trial court should consider and resolve whether the State would have been prejudiced by the alibi testimony and if so "whether that disadvantage might have been redressed by a reasonable continuance." *Id.* at 351, 320 *A.*2d 173. The panel emphasized that such considerations are "especially important where the alibi witness is the defendant himself." *Ibid.*

In *Gonzalez, supra,* the Appellate Division elaborated on the test for preclusion set forth in *Francis.* 223 *N.J.Super.* at 383–91, 538 *A.*2d 1261. It clarified that the factors to be considered in determining whether the sanction of exclusion for failure to give notice of an alibi is appropriate include: "(1) [the] extent of prejudice to the State; (2) the extent to which the alibi defense [i]s crucial to [the] defendant's case; (3) whether a less severe sanction would preserve the policy of [the alibi rule;] and (4) the feasibility of a trial continuance to permit investigation of the alibi." *Id.* at 385, 538 *A.*2d 1261.

The United States Supreme Court has also considered issues concerning notice-of-alibi rules. In *Taylor v. Illinois,* the defense attorney during trial sought to amend his discovery answers to include the names of two alibi witnesses. 484 *U.S.* 400, 403, 108 *S.Ct.* 646, 650, 98 *L.Ed.*2d 798, 807 (1988). Under the governing Illinois law, the defendant was required to give advance notice of any alibi witness. *See id.* at 403 n. 2, 108 *S.Ct.* at 649–50 n. 2, 98 *L.Ed.*2d at 806–07 n. 2. After hearing the testimony of the witness outside the presence of the jury, the trial court found a willful

violation of the discovery rules and precluded the witness from testifying. *Id.* at 404–05, 108 *S.Ct.* at 650–51, 98 *L.Ed.*2d at 807–08.

The Supreme Court considered whether the Sixth Amendment bars a court from using the sanction of preclusion to bar a defendant's witness from testifying. *Id.* at 406, 108 *S.Ct.* at 651, 98 *L.Ed.*2d at 808–09. The Court initially declared that "[t]he right to offer testimony is ... grounded in the Sixth Amendment even though it is not expressly described in so many words," *id.* at 409, 108 *S.Ct.* at 653, 98 *L.Ed.*2d at 810, and that the right of the defendant to present evidence under the Sixth Amendment is applicable to the states, *ibid.*, 108 *S.Ct.* at 653, 98 *L.Ed.*2d at 810–11. In response to the defendant's argument that the sanction of preclusion is "so drastic it should never be imposed," the Court recognized that granting a continuance or a mistrial to give the State time for further investigation could minimize the prejudice and that "further violations can be deterred by disciplinary sanctions against the defendant or defense counsel." *Id.* at 413, 108 *S.Ct.* at 655, 98 *L.Ed.*2d at 813. Nevertheless, the Court found that it was "equally clear that [those sanctions] would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process." *Ibid.*, 108 *S.Ct.* at 655, 98 *L.Ed.*2d at 814. In affirming the trial court's action, the Court concluded that because of the defense counsel's willful misconduct, the severest sanction of preclusion was appropriate. *Id.* at 417, 108 *S.Ct.* at 657, 98 *L.Ed.*2d at 815.

In *Michigan v. Lucas,* a rape case, the Supreme Court addressed whether the trial court violated the defendant's Sixth Amendment rights in prohibiting the defendant from presenting evidence of prior sexual relations with the rape victim. 500 *U.S.* 145, 149, 111 *S.Ct.* 1743, 1746, 114 *L.Ed.*2d 205, 212 (1991). The Michigan Court of Appeals had concluded that preclusion violated the defendant's Sixth Amendment rights. *Id.* at 148–49, 111 *S.Ct.* at 1746, 114 *L.Ed.*2d at 211–12. The Supreme Court reviewed

analogous settings in which the Court upheld a notice requirement, *id.* at 150–53, 111 *S.Ct.* at 1747–48, 114 *L.Ed.*2d at 213–15, and explained its ruling in *Taylor* as follows.

> We did not hold in *Taylor* that preclusion is permissible every time a discovery rule is violated. Rather, we acknowledged that alternative sanctions would be "adequate and appropriate in most cases." We stated explicitly, however, that there could be circumstances in which preclusion was justified because a less severe penalty "would perpetuate rather than limit the prejudice to the State and the harm to the adversary process."
>
> [*Id.* at 152, 111 *S.Ct.* at 1748, 114 *L.Ed.*2d at 214 (citations omitted).]

The Court remanded the matter to the Michigan Court of Appeals to "address whether the trial court abused its discretion on the facts before it." *Id.* at 153, 111 *S.Ct.* at 1748, 114 *L.Ed.*2d at 214.

Several federal circuit courts have held that absent a finding of a willful and blatant discovery violation, the sanction of excluding a witness is not appropriate. *See Noble v. Kelly*, 246 *F.*3d 93, 100 (2d Cir.) (holding that because less onerous sanctions were available to minimize prejudice to prosecution, finding of willfulness required to justify exclusion), *cert. denied*, 534 *U.S.* 886, 122 *S.Ct.* 197, 151 *L.Ed.*2d 139 (2001); *United States v. Peters*, 937 *F.*2d 1422, 1426 (9th Cir.1991) (declaring that because of accused's fundamental right to present witnesses in his or her own defense, witness exclusions only upheld in cases involving willful and blatant discovery violations).

The cases we have discussed thus far considered precluding the testimony of alibi witnesses for failure to give proper notice rather than the issue before us that involves defendant's own alibi testimony. Prior to the *Taylor* decision, the Seventh Circuit addressed the attempt to preclude a defendant's alibi testimony in *Alicea v. Gagnon*, 675 *F.*2d 913 (7th Cir.1982). There, the defendant had not given notice that he planned to testify in his own defense about his alibi and as a result, the trial court excluded his alibi testimony. *Id.* at 915. The Seventh Circuit concluded that in the absence of willful misconduct, the Wisconsin notice-of-alibi statute was unconstitutional as applied. *Id.* at 925. However, the court recognized that there might be "situations where preclusion is a necessary sanction, such as a defendant's intentional suppres-

sion of alibi evidence to gain tactical advantage." *Id.* at 925 (footnote omitted); *see also Campbell v. State,* 622 *N.E.*2d 495 (Ind.1993) (holding exclusion of defendant's own alibi testimony for violating notice provision violated defendant's state constitutional right to testify on his own behalf), *overruled on other grounds, Richardson v. State,* 717 *N.E.*2d 32, 49 n. 36 (Ind.1999).

### B.

█ With the above landscape, we consider whether it was necessary for the Appellate Division to apply constitutional principles to invalidate our notice-of-alibi rule. In reversing the trial court's decision to preclude defendant's testimony, the Appellate Division rejected the principle of *Francis* and *Gonzalez* in favor of a constitutional underpinning. We have often stated that we will not reach a constitutional issue when it is not necessary to decide the appeal. *Randolph Town Ctr., L.P. v. County of Morris,* 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006). Such is the case here. Our alibi rule expressly provides that in the event a defendant fails to give notice of his or her alibi, the court may preclude the witness from testifying, "or make such other order or grant such adjournment, or delay during trial, as the interest of justice requires." *R.* 3:12–2(b). We interpret our rule to mean that only in the rarest of circumstances should the "interest of justice standard" result in a prohibition of a defendant's own alibi testimony as an appropriate sanction.

█ We adopt, as modified, the balancing test for preclusion of a defendant's undisclosed alibi testimony set forth in *Francis* and *Gonzalez,* but include as an additional consideration whether the failure to give notice-of-alibi evidence constituted willful misconduct and intended to gain a tactical advantage. That is, in reaching a fair determination for the appropriate sanction for the breach of the alibi rule, the trial court should consider: (1) the prejudice to the State; (2) the prejudice to the defendant; (3) whether other less severe sanctions are available to preserve the policy of the rule, such as a continuance or a mistrial to permit the

State to investigate the alibi; and (4) whether the defendant's failure to give notice was willful and intended to gain a tactical advantage. Absent a finding that the factors on balance favor preclusion, the interest of justice standard requires a less severe sanction. Moreover, in cases where there is evidence of an attorney's willful violation of the notice rule to gain an advantage, courts should consider a referral to the Office of Attorney Ethics.

We turn now to apply those factors here. At trial, after a brief recess, the prosecutor asked the trial court to take a wait-and-see approach and decide what to do after defendant testified. Thus, the prosecutor recognized that the State might, or might not, need a continuance to investigate defendant's evidence and wanted to keep its options open. In our view, based on defendant's proffered testimony, the prosecutor's suggestion to the court was fair and would have minimized any prejudice to the State. The State could have readily investigated defendant's assertion that he was at home at the time of the alleged rape. Moreover, if the State's evidence against defendant were believed, it was indeed very strong.

The second factor, the prejudice to defendant, is obvious. As noted, he would have testified he was in his home at the time of the incident. Thus, defendant, absent his own testimony, was unable to offer evidence that he was someplace else at the time of the offense. As the United State Supreme Court noted long ago, "the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury." *Rosen v. United States,* 245 *U.S.* 467, 471, 38 *S.Ct.* 148, 150, 62 *L.Ed.* 406, 409 (1918).

The third factor, whether there are other less severe sanctions to preserve the policy of the rule, is also obvious. As noted, the prosecutor suggested the possibility of a continuance after hearing defendant's testimony. Surely that sanction was available. *See Baldwin, supra,* 47 *N.J.* at 390, 221 *A.*2d 199 (approving trial

court's grant of four-day continuance for defendant to investigate State's witness for State's violation of discovery rules).

Finally, there was no evidence to suggest that the fourth factor, whether the failure to give notice was willful and intended to gain an advantage, was satisfied. The record demonstrates that defense counsel mistakenly believed that the rule did not apply to defendant's own testimony and there was no indication that it was a strategic choice by counsel to gain an advantage.

In sum, we are satisfied that this is not that rare circumstance when a defendant's violation of the alibi rule should have resulted in the sanction of preclusion. We hold that it was an abuse of discretion for the trial court to deny defendant the opportunity to present his alibi testimony.

## C.

If there is a "reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits," *State v. Macon*, 57 *N.J.* 325, 338, 273 *A.*2d 1 (1971), a new trial is required. Because defendant objected at trial, the harmful error standard applies. *R.* 2:10–2. The Appellate Division concluded that the preclusion of defendant's alibi testimony was harmful error. We agree.

The State's evidence included the victim's identification of defendant as the assailant, DNA evidence that implicated defendant, and the statement defendant allegedly gave to the police. On the other side, defendant denied making any statement to the police and denied involvement in the incident. Thus, it was for the jury to determine the credibility of the witnesses. Moreover, the testimony of the State's DNA expert raised an issue of contamination of the DNA testing process for the cells that were analyzed, providing a basis for the jury to find that the DNA evidence was not conclusive. Absent the full scope of defendant's testimony, the jury was denied the opportunity to fairly evaluate the evidence

510

and determine the credibility of the witnesses. Consequently, we remand for a new trial.

## IV.

Because we remand the matter for a new trial, we need not fully address the State's contention that the prosecutor's summation was fair and appropriate. We offer only the following comments.

We start with the notion that a prosecutor is afforded considerable leeway to make forceful arguments in summation. *Bender v. Adelson*, 187 *N.J.* 411, 431, 901 *A.*2d 907 (2006). Even so, in the prosecutor's effort to see that justice is done, the prosecutor "should not make inaccurate legal or factual assertions during a trial." *State v. Frost*, 158 *N.J.* 76, 85, 727 *A.*2d 1 (1999). Rather, a prosecutor should "confine [his or her] comments to evidence revealed during the trial and reasonable inferences to be drawn from that evidence." *State v. Smith*, 167 *N.J.* 158, 178, 770 *A.*2d 255 (2001). Nor should the prosecutor vouch for the credibility of a witness. *Frost, supra*, 158 *N.J.* at 85, 727 *A.*2d 1. So long as the prosecutor's comments are based on the evidence in the case and the reasonable inferences from that evidence, the prosecutor's comments "will afford no ground for reversal." *State v. Johnson*, 31 *N.J.* 489, 510, 158 *A.*2d 11 (1960).

Here, the prosecutor stated that "people with handicaps ... have stronger sensory perception," and that the victim was "a lifelong 40–year–old trained observer," and that "[h]er whole world is about her ability to recognize things," to suggest that the victim had a stronger sensory perception than a person without a handicap. However, the State did not present evidence that the victim had a stronger sensory perception because of her condition. Consequently, those comments implied that the victim would not make a mistake in her identification of defendant due to her heightened sensory ability and went beyond the reasonable inferences from the evidence in the case. In short, at any retrial, the prosecutor should neither argue facts that are not in the record, nor expressly or implicitly vouch for the credibility of the victim.

## V.

The judgment of the Appellate Division is affirmed and the matter is remanded for a new trial.

*For affirmance and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.