**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4034-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KAMAL EDGE, a/k/a
RICO EDGE,

    Defendant-Appellant.

_____

        Submitted November 15, 2018 – Decided  December 31, 2018

        Before Judges Alvarez and Reisner.

        On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-05-0443.

        Joseph E. Krakora, Public Defender, attorney for appellant (James K. Smith, Jr., Assistant Deputy Public Defender, of counsel and on the briefs).

        Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Marc A. Festa, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Kamal Edge was convicted of third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1);[1] second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and fourth-degree resisting arrest by flight, N.J.S.A. 2C:29-2(a)(2). He was acquitted of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The following day, the same jury convicted defendant of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(a). On March 31, 2017, the judge merged the weapons offenses, and imposed a sentence of five years subject to a five-year parole bar, concurrent to concurrent terms of three years on the drug possession and eighteen months on the resisting arrest. He now appeals, and we affirm.

The incident that led to the indictment requires only a brief description. Defendant, who was outside his home, spotted police approaching, intending to serve an arrest warrant upon him. He began to run while holding onto his waistband. Despite being ordered to stop, defendant continued running, vaulting over a six-foot fence. Shortly thereafter, other officers cut him off and he was

[1] Prior to trial, the State dismissed the following charges: possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1); possession of CDS on school property, N.J.S.A. 2C:35-7; receiving stolen property, N.J.S.A. 2C:20-7; and attempt to cause injury to another with a weapon, N.J.S.A. 2C:12-1(b)(2).

apprehended. When searched incident to the arrest, officers found eleven glassines of heroin as well as a loaded handgun.

The trial, however, the source of the alleged errors raised on appeal, requires more discussion. In closing, defense counsel suggested that the officers' lack of detailed recollection of the arrest should cause the jurors to question the reliability of their testimony and acquit defendant.

In response, during his summation, the prosecutor stated that the officers remembered the important "details that you would expect to -- a credible witness to recall." He went on to challenge the suggestion that the officers were "outright l[ying] or fabricat[ing]" as they did not fill in the blanks to make the case seem stronger. The prosecutor continued:

> We . . . need our police officers to perform certain functions, perform certain services for us. Above all, we need them to protect us, to serve the public. We also need them to uphold and enforce the law, investigate crimes and to arrest the people that they do. To do this difficult job, we give them great authority and impressive power. We entrust with them that authority and power so that they can do their job well. We give them uniforms to show their authority, badges, we give them marked police cars with lights and sirens so that we know that the person inside is a law enforcement officer. We know that if those lights go on, they can pull us over. We give them weapons. We give them service weapons so that they can protect themselves and protect others. These are awesome powers. Again, this is a relationship between us and them built on trust and

A-4034-16T1

it's why on certain select instances when we see that trust abused, when we see that power overused, when we see that discretion we vest in them used recklessly, it's so frustrating and it's so infuriating. It's also why when we see that power used properly, it's so rewarding, so inspiring. It's the way Detective-Seargent Esposito and Officer Mineo use and wielded their authority. It's the way we expect them to act.

Defense counsel objected. Outside the presence of the jury, he explained his concerns and asked for a mistrial based on the fact that the prosecutor had improperly vouched for the credibility of the officers. The prosecutor responded that his comments were proper comment because they "highlight[ed] facts and evidence that the jury should consider in finding those witnesses credible. I'm allowed to advocate. I'm allowed to say that witnesses are credible." After hearing the playback and listening to some additional on-the-record discussion, the court charged the jury as follows:

> If an attorney on either side is to give his opinion about the testimony of a witness, whether it should be believable, not believable, credible, not credible, okay, does not count. What you believe is credible or not credible is what counts.
>
> You'll hear me describe in a little bit, probably after lunch, the ways you judge the credibility and believability of a witness and it's just any different from how you judge people's credibility in your everyday lives. In any event, it's your opinion, it's your determination, it's what you thought was credible or not credible that counts here. Okay? So if a lawyer

4

expresses an opinion and maybe comment on the evidence, that is not evidence, and it's only your opinion that counts.

Presumably because the court did not clearly indicate whether it sustained the objection, or for some other reason, the prosecutor continued his summation:

The defendant's moving rapidly, he's moving towards him, he can't see his hands, but he doesn't escalate the situation. This is how we expect our officers to wield the authority we vest in them.

Think about what Officer Mineo did. He arrested an armed fleeing suspect safely without him or the defendant being injured. These are the actions of a trustworthy officer. Another word for trustworthy is credible.

Sometimes the simplest explanation is the best. We are here today because when police went to arrest the defendant, he ran. The defendant is guilty of resisting arrest. We're here today because when the defendant was arrested, he had on his person these drugs, this heroin. The defendant is guilty of possession of heroin. We're here because when he was arrested he had in his right front pocket this unlicensed, loaded, fully operational handgun with a round in the chamber and the hammer cocked back. Kamal Edge is guilty.

The judge repeated in his closing general charge the relevant language regarding the fact that attorney arguments are not evidence. The judge also included the instruction providing that the jury can consider flight as evidence

5

of consciousness of guilt.  See Model Jury Charge (Criminal), "Flight" (rev. May 20, 2010).

Towards the end of the model jury charge on the substantive crime of resisting arrest by flight, the judge added:

> Not the -- not the flight that I -- the other flight that I spoke about earlier has to do with a consideration of the evidence that was presented.  In this particular case, you have to find beyond a reasonable doubt that there was flight.

He then continued:

> The -- the defendant denies flight.  Mere . . . departure from a place where a crime has been committed does not constitute flight.  The State must prove beyond a reasonable doubt that the defendant, fearing that he would be arrested, fled for the purpose of evading that arrest.  The State must prove beyond a reasonable doubt that the defendant, fearing that he would be arrested, fled for the purpose of evading that arrest.
>
> If you find that the State has proven beyond a reasonable doubt all five elements of the offense, then you must find the defendant guilty of resisting arrest by flight.  If the State has failed to prove the fifth element beyond a reasonable doubt, you must find the defendant guilty only of the basic offense of resisting arrest.
>
> [See Model Jury Charges (Criminal), Resisting Arrest-Flight Alleged (N.J.S.A. 2C:29-2(a)) (rev. May 7, 2007).]

Neither attorney objected to the judge's instructions.

6

On appeal, defendant raises the following points:

POINT I
IN THIS CASE, WHICH CENTERED ON THE CREDIBILITY OF THE POLICE OFFICERS, THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S COMMENTS IN SUMMATION VOUCHING FOR THE OFFICERS AS "TRUSTWORTHY" AND "CREDIBLE"; REFERRING TO THE "RELATIONSHIP BETWEEN THEM AND US BUILT ON TRUST"; AND EXPRESSING HIS PERSONAL [OPINION] THAT THEIR ACTIONS IN THIS CASE WERE "REWARDING" AND "INSPIRING." THE PREJUDICE TO DEFENDANT WAS NOT MITIGATED DUE TO THE TRIAL COURT'S FAILURE TO GIVE A MEANINGFUL LIMITING INSTRUCTION.

POINT II
IN A CASE WHERE DEFENDANT WAS CHARGED WITH RESISTING ARREST BY FLIGHT, THE JUDGE'S DECISION TO CHARGE FLIGHT AS CONSCIOUSNESS OF GUILT, WITHOUT SPECIFICALLY INFORMING THE JURY THAT THAT CHARGE DID NOT APPLY TO THE RESISTING ARREST COUNT, LIKELY HAD THE EFFECT OF CONFUSING THE JURY AND REQUIRES THAT DEFENDANT'S CONVICTION FOR RESISTING ARREST BE VACATED.

I.

When reviewing a prosecutor's summation, the court must examine questionable comments "in the context of the entire trial." State v. Morton, 155 N.J. 383, 419 (1998). This necessarily includes statements made by the defense

7

counsel, such as their "opening salvo" or prosecutorial comments attempting to "right the scale" in response. State v. Engel, 249 N.J. Super. 336, 379 (App. Div. 1991) (citing United States v. Young, 470 U.S. 1, 12 (1985)). In order to justify reversal, the prosecutor's summation must have been "clearly and unmistakably improper," and must have "substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Wakefield, 190 N.J. 397, 438 (2007).

Moreover, with regard to summations addressing testimony of State witnesses, the prosecution may never vouch for their credibility, nor imply mandatory acceptance by virtue of their profession. State v. Bradshaw, 195 N.J. 493, 510 (2008); State v. Staples, 263 N.J. Super. 602, 606 (App. Div. 1993). For summations addressing comments by police officers in particular, the State must be careful in its comments because police "occupy a position of authority in our communities," and it is possible that ordinary citizens will be more likely to believe them than others. State v. Hawk, 327 N.J. Super. 276, 285 (App. Div. 2000). If however, the trial court directly addressed the issue with "a timely and effective limiting instruction," the potential prejudice may be cured. State v. Jackson, 211 N.J. 394, 413 (2012).

A-4034-16T1

In Bradshaw, the Court made clear that although a prosecutor is afforded considerable leeway in closing, he is limited to comments based solely on the evidence and solely upon reasonable inferences drawn from that evidence. 195 N.J. at 510. In this case, like in Bradshaw, the State had no basis in the record whatsoever for any broad brush discussion of the purported reasonableness of the police officers' response to defendant's conduct. A discussion about the power vested in police, society's reliance on police officers, and the trust we repose in them when we arm them, went far beyond anything in the record. By engaging in generalities regarding the officers' professionalism in this case, and expressing his own opinion about it in order to bolster the officers' credibility, the prosecutor did exactly what is forbidden. His approving language regarding their performance had little to do with whether they were credible witnesses. See State v. Blakney, 189 N.J. 88, 95-96 (2006).

It is a prosecutor's duty, as Blakney stated, not to obtain convictions "but to see that justice is done." Id. at 96 (quoting State v. Ramseur, 106 N.J. 123, 320 (1987)). In this case, where the facts were so clear, and the officers' testimony was undisputed except by defense counsel's weak argument that the failure to recall minutia meant they were incredible, the State's inflammatory closing was entirely unnecessary. It seems particularly egregious that after the

court's instruction, the prosecutor continued in the same flag-waving vein as if defense counsel's objection had been overruled, without acknowledging in any manner that his statements went beyond the limit.

The judge's instruction, although it may have ameliorated the harm somewhat, did not directly address the problem. He should have sustained the objection and stricken the comments from the record.

Because this is such a straightforward case in which the State's proofs were so strong, we cannot conclude that the prosecutor's improper comments prevented the jury from rendering a just verdict based solely on the evidence. See State v. Marshall, 123 N.J. 1, 161 (1991). We hold this error, which is not insignificant, harmless in the context of the entire trial. State v. Morton, 155 N.J. 383, 419 (1998).

II.

Defendant's next argues that the trial court confused the jury, because it failed to properly distinguish flight as consciousness of guilt from flight in resisting arrest. We do not agree.

It is well-settled that "appropriate and proper jury charges are essential to a fair trial." State v. Savage, 172 N.J. 374, 387 (2002). The standard for assessing the soundness of a challenged jury instruction is "how and in what

sense, under the evidence before them, and the circumstances of the trial, would ordinary . . . jurors understand the instructions as a whole." Ibid. Even though a defendant generally waives the right to appeal an unchallenged instruction, an appellate court may still reverse pursuant to the plain error standard. State v. Adams, 194 N.J. 186, 206-07 (2008); R. 2:10-2. Under the plain error standard, an appellate court will only reverse if a mistake is "clearly capable of producing an unjust result," and a reasonable doubt exists "as to whether the error led the jury to a result it otherwise might not have reached." State v. Funderburg, 225 N.J. 66, 79 (2016).

With regard to specific flight instructions, "evidence of flight or escape from custody by an accused generally is admissible as demonstrating consciousness of guilt, and is therefore regarded as probative of guilt." State v. Mann, 132 N.J. 410, 418 (1993). Additionally, if the trial court deems evidence of flight admissible, "it must instruct the jury carefully regarding the inferences the jury may draw from that evidence." Id. at 420. In doing so, the court must "carefully consider whether it is appropriate to charge flight, and, if so, must tailor the charge to the facts of the case to prevent juror confusion." State v. Randolph, 441 N.J. Super. 533, 563-64 (App. Div. 2015).

The flight as consciousness of guilt charge applied only to the possessory offenses, while the resisting arrest by flight charge explained an actual offense requiring proof beyond a reasonable doubt. Defendant now argues that the instruction confused the jury because it did not unambiguously clarify the distinction. Defendant's argument is based in part on two unpublished cases that have no precedential value. R. 1:36-3. Defense counsel did not raise an objection at the time, thus we examine the issue under the plain error standard. See Adams, 194 N.J. at 206-07; R. 2:10-2.

Faced with two flight charges, the trial court separated them to avoid confusion. He instructed the jury as to flight as consciousness of guilt as part of his general closing charge. Only much later, at the end of all the substantive instructions, did he define the crime of resisting arrest by flight. The judge inserted his own words into the model charge, stating that, "the other flight that I spoke about earlier has to do with a consideration of the evidence that was presented. In this particular case, you have to find beyond a reasonable doubt that there was flight."

Although the judge could have explained the distinction more explicitly, he informed the jury that the instruction about the substantive crime differed from that which was a circumstance indicating consciousness of guilt. Telling

the jury that the flight instruction he gave earlier "has to do with a consideration of the evidence that was presented[]" sufficed in context and because the model charge on resisting arrest came at the end of all the substantive charges. Therefore, we find no merit to this claim of error either.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4034-16T1