**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0675-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MARC C. MONZON, a/k/a
MAURO J. ENRIQUEZ,
JAY MAURO ENRIQUEZ,
MAURO JAY ENRIQUEZ,
MAURO ENRIQUEZ, and
MAURO DEL ROSARIO,

      Defendant-Appellant.

_____

Submitted September 13, 2022 – Decided September 27, 2022

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-06-0698.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of

counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Following a jury trial, defendant Marc C. Monzon was convicted of second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b). He was later sentenced to a fourteen-year prison term with a seven-year period of parole ineligibility.  Defendant appeals arguing:

> POINT I
>
> DEFENDANT WAS DENIED HIS RIGHTS TO CONFRONTATION AND TO DUE PROCESS OF LAW BY THE INTRODUCTION OF IMPROPER TESTIMONY THAT THE [BACKPACK] IN WHICH THE GUN WAS FOUND BELONGED TO HIM. U.S. CONST. AMENDS. V, VI, and XIV; N.J. CONST. ART. I, PARS. 1, 9, AND 10.
>
> POINT II
>
> A REMAND FOR RESENTENCING IS NECESSARY BECAUSE, IN IMPOSING SENTENCE, THE COURT CONSIDERED CONDUCT FOR WHICH DEFENDANT WAS ACQUITTED.

We conclude the jury heard improper testimony that defendant owned the backpack containing a handgun, thereby denying his right to confrontation and due process.  Therefore, his conviction and sentence are vacated; a remand for retrial is necessary.  Should defendant be convicted at retrial, his alleged

2

conduct—pointing a gun at someone—for which defendant was acquitted of in a previous jury trial, should not be considered at sentencing as an aggravating factor.

I

In the spring of 2018, defendant left his live-in girlfriend, Nikki Cappiello, and rekindled a relationship with Jade Parron, whom he had known for about two months. Defendant and Parron temporarily moved in with Genylyn Sese, defendant's long-time friend, who lived in a two-bedroom apartment in East Rutherford.

About two weeks later, defendant told Sese that he was getting back together with Cappiello. When Parron returned to Sese's apartment after staying with a friend the night before, Parron moved out of the apartment after reporting to the police that defendant had a handgun with a red laser.

An investigation by the East Rutherford Police Department, the Bergen County Sheriff's Department, and the Bergen County Prosecutor's Office culminated in a seven-count indictment against defendant. Defendant was charged with fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-

3

degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); fourth-degree aggravated assault (pointing a firearm), N.J.S.A. 2C:12-1(b)(4); third-degree possession of controlled dangerous substances (CDS), N.J.S.A. 2C:35-10(a)(1); and second-degree certain persons not to possess a weapon.

Two jury trials ensued. At the first, the trial judge dismissed the charges of fourth-degree unlawful possession of a knife and third-degree possession of a knife for an unlawful purpose. The jury acquitted defendant of fourth-degree aggravated assault (pointing a firearm) but was unable to reach a verdict on second-degree unlawful possession of a handgun, second-degree possession of a handgun for an unlawful purpose, third-degree possession of CDS, and second-degree certain persons.

Prior to the second trial, the one in question here, the State dismissed the charges of second-degree unlawful possession of a handgun, second-degree possession of a handgun for an unlawful purpose, and third-degree possession of CDS. Parron, East Rutherford Police Detective Sergeant Robert Applegate, and Sese testified on behalf of the State.

The prosecutor showed Parron a backpack that was found in the closet of Sese's apartment. She stated it was defendant's backpack because she had often seen defendant with it during the two months she knew him. Parron admitted

that when she first moved into the apartment, she smoked crystal methamphetamine (meth) "give or take" every day but claimed she hadn't used it for about a week prior to reporting that defendant had a handgun, and she was not high on the day of the report because she was starting a new job and "wanted a pretty clear head". She further denied the drug made her anxious or agitated, act impulsively, gave her hallucinations, or made her paranoid.

Parron repeatedly rejected having any type of romantic relationship with defendant when questioned by the police during their investigation. She admitted on cross-examination, however, that they had a "very brief" sexual relationship when they first met, which ended because defendant was impotent.

Applegate executed a search warrant at the apartment seeking a black handgun with a laser sight. He searched the back right bedroom, which was Sese's bedroom, beginning with one of the two closets. In the closet closest to the door, he found several drawstring laundry bags and a backpack that was pushed behind a green drawstring laundry bag. The backpack contained a black handgun with a red laser sight and a magazine holding ten rounds. In the backpack's main pocket, where the gun was found, were a phone charger, a man's tee shirt and socks, and two bottles of male enhancement pills. Other items found in the backpack included two bags of meth, headphones, a utility knife, a

A-0675-19

ruler, a butane torch lighter, a box cutter, a small manila envelope, markers, keys, a mini speaker, a brush, and a comb. Additionally, a bag of meth was found in a keychain on the nightstand.

Upon testing, the handgun was determined to be operable. According to Applegate, none of the evidence obtained at the scene was fingerprinted.

During the prosecutor's questioning, Applegate stated he knew the backpack belonged to defendant. When he stated it belonged to defendant, defense counsel objected, and after a sidebar conversation, the trial judge stated:

> I'm going to instruct the jury that with respect to the last question and answer, specifically . . . the question was ["]who did this belong to["] and the answer was "it belonged to [defendant]," the jury is to completely disregard that testimony and to not take it into account . . . in any way in connection with [its] deliberations.

Sese testified that she "always" saw defendant with the backpack, including seeing it in his bedroom the morning of the incident. The trial judge sustained defense counsel's objection that she told the police the day of the incident the backpack belonged to defendant. No curative instruction was given to the jury.

On cross-examination, Sese stated she did not own a handgun, did not know there was one in her apartment, and did not know why one was in her closet. She also stated that in the twenty years she had known defendant, he

6

never mentioned guns, and she never saw him with a gun. Sese acknowledged that the meth in the keychain and the drug paraphernalia found in the closet were hers. Yet, she testified that on a police-recorded call with defendant, she told him "[t]hey're giving [drug possession charges] to me, but it's not even mine."

With respect to Parron's drug use, Sese testified Parron smoked meth in Sese's apartment "every other day" during the two weeks Parron lived in the apartment. Additionally, Sese testified that prior to the incident, she told Parron she had to move out of the apartment because Parron was "accusing [Sese and defendant] of certain things."

In its summation, the State asserted:

> [Sese] told you, just like she told the police, she didn't know where this [backpack] was found. When she came home from work that day, there were police all in her house because they responded to a man with a gun. She was asked by the police officer, who does this [backpack] belong to? . . . . She said it's Mauro's, . . . , the defendant right here. . . .
> April 19th, that's what she said in this telephone call. When she said on the phone call, when I got to the house here they asked me—whose is this, they said. I was asked if it was mine. I said it's not mine. I said it's yours, as soon as I came home. That's what she told you here, didn't know where this backpack was found. She was just asked, who does it belong to? She told the police who it belonged to. He's [(meaning defendant)] sitting right here.

A-0675-19

The judge overruled defense counsel's objection to the prosecutor's recitation of the hearsay testimony that Sese told the police it was defendant's backpack. The judge ruled: "Well, this is summations. She's talking about the evidence in the case."

The jury found defendant guilty of the certain persons offense. The judge later sentenced him to an extended fourteen-year term as a persistent offender, N.J.S.A. 2C:44-3(a), subject to a seven-year period of parole ineligibility.

At sentencing, the judge considered a letter by Parron, who, according to the State, was unable to attend because she had to work. The defense objected to the letter being considered because it included a version of facts that was from the first trial in which defendant was acquitted of pointing a gun at Parron. The judge disagreed, believing that despite the fact defendant was not convicted of the offense, it was "appropriate for me to take into account the impact on [] Parron."

## II

Before us, defendant argues the prosecutor improperly elicited prejudicial testimony from Applegate, suggesting the State had extra-record evidence establishing defendant as the owner of the backpack containing the handgun, making him guilty of the certain persons offense. Relying on State v. Bankston,

63 N.J. 263, 268 (1973), State v. Irving, 114 N.J. 427, 446 (1989), and State v. Branch, 182 N.J. 338, 351 (2005), defendant contends he was denied his rights to due process and to confront his accusers due to Applegate's "inferential hearsay" regarding the owner of the backpack, an item which was the crux of the State's case. Pointing to the limited evidence against him of only the testimony from Sese and Parron, two admitted drug abusers, and Applegate, defendant maintains Applegate's testimony irreparably bolstered Parron's and Sese's testimony, and the trial judge's jury instruction was incapable of curing the prejudice created by Applegate's testimony. Defendant maintains the testimony constituted prosecutorial misconduct so egregious that a remand for a new trial is warranted. We agree.

Criminal trial court rulings on evidential admissibility are entitled to a strong degree of deference and are reviewed under an abuse of discretion standard. State v. Prall, 231 N.J. 567, 580 (2018). "Under that deferential standard, [appellate courts] review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). An appellate court "will not substitute [its] judgment unless the evidentiary ruling is 'so wide of the mark' that it constitutes 'a clear error in judgment.'" State v. Garcia, 245 N.J. 412, 430 (2021)

9

(quoting Medina, 242 N.J. at 412).

"[Appellate] review of the evidentiary determinations cannot end our analysis when we find an abuse of discretion; rather, we must then determine whether any error found is harmless or requires reversal." Prall, 231 N.J. at 581. The harmful error rule is used when a specified error was brought to the trial judge's attention. State v. G.E.P., 243 N.J. 362, 389 (2020); State v. Mohammed, 226 N.J. 71, 86 (2016). Thus, even though an alleged error was brought to the trial judge's attention, it will not be ground for reversal if it was "harmless error." Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018); State v. J.R., 227 N.J. 393, 417 (2017); State v. Macon, 57 N.J. 325, 338 (1971). That is so because

> [t]rials, particularly criminal trials, are not tidy things. The proper and rational standard is not perfection; as devised and administered by imperfect humans, no trial can ever be entirely free of even the smallest defect. Our goal, nonetheless, must always be fairness. "A defendant is entitled to a fair trial but not a perfect one."
>
> [State v. R.B., 183 N.J. 308, 333-34 (2005) (quoting Lutwak v. United States, 344 U.S. 604, 619 (1953)).]

Although there may be plain error during a jury trial, an error will be found "harmless" if the error did not contribute to the jury's verdict. That is "the error must be 'sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached.'" State v. Daniels, 182 N.J. 80, 95

(2004) (alteration in original) (quoting Macon, 57 N.J. at 336). This is true even if the error is of constitutional dimension. Macon, 57 N.J. at 338; State v. Slobodian, 57 N.J. 18, 23 (1970). "The Supreme Court has emphasized that 'most constitutional errors can be harmless,' and are therefore not subject to automatic reversal." State v. Camacho, 218 N.J. 533, 547 (2014) (quoting Arizona v. Fulminante, 499 U.S. 279, 306 (1991)). Nonetheless, "[i]f there is a 'reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits,' a new trial is required." State v. Bradshaw, 195 N.J. 493, 509 (2008) (quoting Macon, 57 N.J. at 338) (internal citation omitted).

"An evidentiary error will not be found 'harmless' if there is a reasonable doubt as to whether the error contributed to the verdict." J.R., 227 N.J. at 417. Said another way, "[t]he harmless error standard requires that there be some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." State v. Lazo, 209 N.J. 9, 26 (2012) (internal quotation marks and citation omitted).

We conclude defendant was prejudiced and denied his right to due process because the jury's verdict was improperly influenced when the State elicited improper testimony from Applegate and hearsay testimony from Applegate and

11

Sese. Moreover, the prosecutor's summation comments highlighting and repeating the hearsay testimony exacerbated the prejudice to defendant.

Applegate did not provide testimony on what he perceived, but rather, asserted what he was told concerning ownership of the backpack. As a lay witness, he could only testify "in the form of opinions or inferences" if "rationally based on [his] perception" and if his testimony "will assist in understanding [his] testimony or in determining a fact in issue." N.J.R.E. 701. He cannot "offer a lay opinion on a matter . . . as to which the jury is as competent as he to form a conclusion[.]" State v. McLean, 205 N.J. 438, 459 (2011) (internal quotation marks and citation omitted). Applegate's testimony was particularly problematic because a law enforcement officer cannot offer an opinion regarding a defendant's guilt. See State v. Frisby, 174 N.J. 583, 593-94 (2002) (disapproving police testimony that opined on the innocence of one person and, inferentially, the guilt of the defendant). And as this court explained in State v. Tung:

> Police testimony concerning a defendant's guilt or veracity is particularly prejudicial because "[a] jury may be inclined to accord special respect to such a witness," and where that witness's testimony goes "to the heart of the case," deference by the jury could lead it to "ascribe[ ] almost determinative significance to [the officer's] opinion."

12

[460 N.J. Super. 75, 102 (App. Div. 2019) (internal citations omitted).]

Applegate testified he knew the backpack belonged to defendant on the day of the incident, which implied that he knew of this information from a non-testifying witness. The State asserts there was no violation of defendant's rights to confrontation because Sese was the person who told Applegate the backpack belonged to defendant; thus, his testimony did not include information from a non-testifying witness. We disagree.

Although Sese testified at trial, her testimony that she told the police the backpack belonged to defendant was ruled inadmissible hearsay. Assuming the jury followed the judge's instruction to disregard the hearsay, see State v. Smith, 212 N.J. 365, 409 (2012), the logical implication drawn from Applegate's testimony was he knew the backpack's owner on the day of the incident which could certainly "lead[] the jury to believe that a non-testifying witness[, Sese,]. . . g[ave] . . . [Applegate] evidence of [defendant's] guilt[.]" State v. Bankston, 63 N.J. 263, 271 (1973).

The trial judge instructed the jury to disregard Applegate's testimony that the backpack belonged to defendant, but the judge did not instruct it to also disregard Applegate's testimony that he knew the identity of the owner of the backpack on the day of the incident. This was not harmless error. The failure to strike that part of the testimony left the jury with the belief Applegate "possesse[d] superior

knowledge, outside the record, that incriminate[d] the defendant." Branch, 182 N.J. at 351. Defendant's ability to cross-examine Sese, the alleged informant, was insufficient to mitigate the prejudice caused by Applegate's permitted testimony because her testimony, in which she told police it was defendant's backpack, was stricken from the record as hearsay and presumptively not considered by the jury during deliberation. Because we assume the jury followed the curative instructions, the jury was more than likely left to believe that Applegate knew information from a non-testifying witness. Since under the Sixth Amendment to the Constitution of the United States and Article I, Paragraph 10 of our State Constitution, an accused in a criminal case has the right to confront adverse witnesses, State v. Guenther, 181 N.J. 129, 147 (2004), defendant was denied due process.

The prejudice to defendant was compounded by the prosecutor's inexplicable summation comments that Sese told Applegate the backpack belonged to defendant, despite the trial judge previously ruling such testimony was inadmissible. This bolstered Applegate's testimony that he knew to whom the backpack belonged. Moreover, it allowed the introduction of testimony the defense could not challenge. To be consistent with his earlier ruling, the judge should have sustained defendant's objection. In not doing so, the State was

14

allowed a "backdoor" means to prosecute defendant by making arguments based on inadmissible hearsay testimony.

Considering the initial trial resulted in a deadlocked jury on the certain persons charge, as well as the charges of second-degree unlawful possession of a handgun, second-degree possession of a handgun for an unlawful purpose, and third-degree possession of CDS (the latter of which the State subsequently dismissed), it is unclear what evidence the second jury relied upon to find defendant guilty of certain persons  Hence, we are convinced the cumulative effect of the noted errors prejudiced defendant and rendered his trial unfair, warranting vacation of his conviction and a new trial.

## III

Because we vacate defendant's conviction, we would not normally address his challenge to his sentence.  Nonetheless, we note that the State now agrees with his contention that the trial judge improperly considered the allegation at sentencing that he pointed a gun at Parron, despite defendant being acquitted of the allegation.  In State v. Melvin, our Supreme Court held that "fundamental fairness prohibits courts from subjecting a defendant to enhanced sentencing for conduct as to which a jury found that defendant not guilty."  248 N.J. 321, 326 (2021).  Accordingly, should defendant be convicted for certain persons at

15

retrial, neither Parron's allegation nor any other allegation for which defendant was found not guilty should be considered at sentencing.

Reversed and remanded to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0675-19